UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, Plaintiff, v. JOSE LUIS FIGUEROA-VALENZULA, Defendant. | Case No. 1:19-cr-00083-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |
|---|---|

# I. INTRODUCTION

Pending before the Court is Defendant Jose Luis Figueroa-Valenzuela, AKA Jose Luis Figueroa's ("Figueroa"), Motion to Dismiss Indictment. Dkt. 27. Figueroa claims that the charge brought against him under 8 U.S.C. § 1326 is based off an invalid prior expedited removal. Dkt. 27-1.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, the Court GRANTS the Motion to Dismiss.

# II. BACKGROUND

Figueroa is a 36-year-old Mexican national. Dkt. 27-2. He first entered the United States as a young boy in 1996, when he was brought to California to be with his parents.

*Id.* In 2006, Figueroa lived in Boise with his significant other, Cruz Leticia Figueroa-Ayala. *Id.* They had one child, Xina. *Id.* In April 2006, Figueroa learned that his brother in Mexico had died. *Id.* Figueroa immediately went to Mexico to attend his brother's funeral. *Id.* Figueroa attempted to return to the United States in May 2006, when border patrol agents found him walking with other undocumented immigrants in the desert near New Mexico's Florida Mountains. Dkts. 27-2, 32-1. The agents detained and transported Figueroa to the border patrol station in Deming, New Mexico. Dkt. 32-1. According to Figueroa, at some point during this process he told one of the arresting agents that he feared returning to Mexico because "his brother had just been murdered there." Dkt. 27-2. Figueroa maintains that in response, the agent said, "[e]verybody says something like that, that's not going to help you at all." *Id.*

Figueroa was subsequently processed for expedited removal, during which a border patrol agent conducted an intake interview. *Id.*, Dkt. 32-1. The agent informed Figueroa that the interview may be his only time to present information for the Immigration and Naturalization Service to consider when deciding whether or not to deport him. Dk. 32-3. The agent specifically told Figueroa that protection is available to certain individuals facing persecution or harm upon returning to their home country and advised Figueroa that if he was afraid or concerned about being removed, to say so during the interview, as there may be no other time to do so. *Id.* When asked directly if he had "any fear or concern" about being returned to Mexico, Figueroa answered no. Dkt. 32-4. The agent recorded that Figueroa "claim[ed] no fear of persecution or torture if returned to his native country of Mexico." *Id.* Figueroa was later removed from the United States.

In February 2019, the Boise Fugitive Operations Team received information from an individual calling the Homeland Security Investigations (HSI) Tip Line that Figueroa had illegally reentered the country. Dkt. 32-5. On February 13, 2019, Figueroa was arrested and taken into custody by ICE agents. Dkt. 32-6. Figueroa was indicted on March 12, 2019, for violating 8 U.S.C. § 1326(a) and (b) for his unauthorized reentry into the United States following his prior removal in 2006. Dkt. 14. On May 5, 2019, the same individual who had reported on Figueroa in February called the HSI Tip Line and reported that Figueroa was making false claims to ICE officials to attain asylum and remain in the United States. Dkt. 32-5. Figueroa filed this Motion to Dismiss the Indictment on June 21, 2019. Dkt. 27.

### III. DISCUSSION

A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a due process right to challenge the validity of the underlying deportation order because it is a predicate element of his conviction. *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012). To succeed on a challenge under 8 U.S.C § 1326, a defendant must show: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued 'improperly deprived [him] of the opportunity for judicial review' and (3) that 'the entry of the order was fundamentally unfair.'" *Id.* (quoting *United States v. Ortiz–Lopez*, 385 F.3d 1202, 1203–04 (9th Cir.2004)).

Expedited removal proceedings offer no administrative remedy or opportunity for judicial review, therefore, an alien satisfies the first two requirements when he shows that the removal order arose from an expedited removal proceeding. *United States v. Raya-*

MEMORANDUM DECISION AND ORDER - 3

*Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014). Thus, an alien challenging an expedited removal order need only show that the entry of the order was "fundamentally unfair."

An underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Melendez-Castro*, 671 F.3d at 953 (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)). The Court will address each element in turn.

A. Due Process Violations

Figueroa argues that the indictment must be dismissed because the prior expedited removal violated his due process rights, making it invalid. Dkt. 27-1, at 1-2. Figueroa argues that the border patrol agents who processed him for removal in 2006 violated his due process rights when they (1) disregarded his assertion of fear of returning to Mexico, (2) improperly advised him that the proceedings he was in would result in deportation, (3) failed to provide an opportunity for him to review his sworn statement before he signed it, and (4) failed to obtain his signature on Form I-860. Dkt. 32, at 5. The Court will address each argument.

1. Assertion of Fear

Figueroa first claims that his due process rights were violated when border patrol agents allegedly disregarded his statement that he was fearful to return to Mexico, rather than referring him for a credible fear interview. Dkt. 27-1, at 7. In an expedited removal proceeding, an alien's fundamental due process rights include "notice of the charge the alien faces and the alien's opportunity to respond to that charge." *Raya-Vaca*, 771 F.3d at

1204. The regulations governing an expedited removal proceeding instruct the agent to advise an alien of the charge against him and to permit the alien to read, or be read, the sworn statement prepared in his name, and in doing so, protect these fundamental due process rights. *Id.*; 8 C.F.R. § 235.3(b)(2)(i). However, not all violations of a regulation amount to due process violations. *Raya-Vaca*, 771 F.3d at 1204.

Figueroa did not present any direct support for his claim that due process mandates referral for a credible fear interview, and the Court is not aware of any caselaw holding as such. Even assuming, however, that due process did mandate such a referral, Figueroa was given numerous opportunities during his removal proceedings to assert a fear of persecution but chose not to do so. During his removal interview, the border patrol agent explained to Figueroa the potential for protection and the importance of raising any fear he might have about removal. Dkt. 32-3. Following this conversation, when asked if he had any fear or concern about returning to Mexico, Figueroa answered "No." *Dkt. 32-4*. Additionally, when asked if he would be harmed if he was returned to his home country or removed from the United States, he again answered "No." Dkt. 32-4. Had Figueroa answered yes to either question, and the interviewing agent had then failed to refer him for a credible threat interview, as is standard practice under 8 C.F.R. § 235.3(b)(4), a violation may have occurred. But that is not what happened in this case.

Because Figueroa declined to assert a fear of persecution when directly asked, the Court finds that the failure to refer Figueroa for a credible fear interview was not a due process violation.

2. Advisement on Likelihood of Removal

Figueroa also argues that his due process rights were violated when agents advised him that his deportation proceedings would result in his removal from the United States, failed to allow him an opportunity to review his sworn statement before he signed it, and failed to obtain his signature on Form I-860. Dkt. 27-1, at 2. The alleged failure to allow Figueroa to review his sworn statement, as well as the alleged failure to obtain his signature on Form I-860, are violations of 8 C.F.R. § 235.3, if substantiated.

As the Court noted above, not every violation of a regulation constitutes a violation of due process. *Raya-Vaca*, 771 F.3d at 1204. However, failure to inform an alien of the charge against him and to provide him the opportunity to review his sworn statement can constitute a violation of the alien's due process rights. *Id.*

In *Raya-Vaca*, the defendant alleged that the border patrol agent failed to inform him of the nature of his expedited removal proceeding, or that he could be ordered removed from the United States. *Id.* at 1204-05. The defendant further alleged that the agent did not read him the information in his sworn statement or provide him an opportunity to review it. *Id.* Although he had initialed the Record of Sworn Statement and signed the Jurat, the defendant stated that the did not understand what he was signing. *Id.* Additionally, the signed Jurat only indicated that the defendant had read or had read to him "this statement, consisting of 1 pages (including this page)," while the Record of Sworn Statement and Jurat together totaled four pages. *Id.* The government did not contest the defendant's allegations. *Id.* Because the government did not contest the defendant's allegations, the

Ninth Circuit found them to be true and held that they amounted to violations of due process. *Id.* at 1205.

Here, like the defendant in *Raya-Vaca*, Figueroa claims that border patrol agents did not properly advise him about the potential outcome of his removal proceeding. Dkt. 27-1, at 13-14. Unlike the defendant in *Raya-Vaca*, Figueroa does not claim that he was uninformed of the nature of the removal proceeding, or that he could be ordered removed. Instead, Figueroa admits that was he was informed from the outset that the outcome of his expedited removal proceeding would be deportation. Dkt. 27-1, at 13. Figueroa contends that this somehow amounts to a due process violation, because it was "affirmative misadvice." *Id.* at 14. The Court is not aware of any caselaw holding that a border patrol agent informing an alien about the likely outcome of an expedited removal proceeding is a violation of due process, and Figueroa has not provided any in support of this contention. The Court declines to hold that the agent violated Figueroa's right to due process by telling him he would be deported.

3. Opportunity to Review Sworn Statement

Figueroa also claims that the border patrol agent did not give him the opportunity to review his sworn statement. Dkt. 27-1, at 14. Like the defendant in *Raya-Vaca*, Figueroa signed the Jurat, acknowledging that the he had "read (or have had read to me) this statement, consisting of 1 pages (including this page.)" Figueroa signed the first page and initialed the subsequent pages. His Declaration states that he did not have the opportunity to read the pages that he initialed. Dkt. 27-2, ¶ 17. What separates this case from *Raya-Vaca* is that here, the page Figueroa signed and acknowledged he read is the page that says

he has no fear or concern about being returned to his home country or being removed from the United States and that he would not be harmed if he returned to his home country. Dkt. 27-3. However, due process is not about whether he feared returning to Mexico, it is about whether he was advised of his rights and given the right to read his entire statement. *See, U.S. v. Arizmendi-Depaz,* 2019 WL 3945459 (S.D. Cal. 2019). He was not. Critically, the government does not dispute this. Instead it simply points out the lack of evidence to support Figueroa's assertion beyond his own declaration. Dkt. 32 at 7. This is insufficient to rebut Figueroa's claim that he was not given an opportunity to review his statement. Figueroa's statement is undisputed. The Court therefore holds that Figueroa was not given an opportunity to review his entire statement, in violation of his due process rights.

4. Signature on Form I-860

Figueroa claims his due process rights were further violated when the agent allegedly failed to obtain his signature on Form I-860. Dkt. 27-1, at 18. The purpose of Form I-860 is to ensure that aliens are given notice of charge against them. 8 C.F.R. § 235.3(b)(2)(i). The failure to obtain an alien's signature on Form I-860 constitutes a presumptive violation of the alien's due process rights. *United States v. Rojas-Fuerte*, No. 3:18-CR-347-SI, 2019 WL 1757523, at *5 (D. Or. Apr. 19, 2019) (citing *United States v. Hernandez-Rodriguez*, 2019 WL 1508039, at *1 (E.D. Wash. Apr. 5, 2019); *United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 999 (D. Or. 2019); *United States v. Arteaga-Gonzalez*, 2013 WL 5462285, at *4 (S.D. Cal. Sept. 30, 2013). The relevant portion of 8 C.F.R. § 235.3(b)(2)(i) states: "the examining immigration official shall serve the alien with Form I–860 and the alien shall sign the reverse of the form acknowledging receipt."

Based on this language, Figueroa's signature should have been obtained on the back of Form I-860. The Court has not been provided with a copy of the back side of Form I-860.[1] Without the back side of Form I-860 or any declaration from the government that Figueroa signed the back side of the form, Figueroa's declaration that he did not sign it stands undisputed. Thus, there is a presumptive violation of due process, which the government has made no effort to overcome.

B. Prejudice

While the Court is persuaded by two of Figueroa's arguments—and finds that his due process rights were violated—in order to succeed in showing that the 2006 expedited removal order was fundamentally unfair, Figueroa must also establish that the Government's due process violations resulted in prejudice. *Melendez-Castro*, 671 F.3d at 953. To establish prejudice, Figueroa must show that he had "plausible grounds for relief" from the removal order. *Raya-Vaca*, 771 F.3d at 1207.

Figueroa's only relief from the removal order was withdrawal of his application for admission to the United States. *Id.* at 1206; 8 U.S.C. § 1225(a)(4). Withdrawal of application for admission is a form of discretionary relief, left to the decision of the

---

[1] The government has not submitted the back of this form and based on Figueroa's brief he was not provided a copy of the back in discovery. The government proceeds in their reply brief as if Figueroa is correct and his signature was not obtained:

> The Defendant points to the incorrect number of pages recorded on the Jurat and to the lack of the Defendant's signature on Form I-860. However, the crux of due process in an expedited removal proceeding is whether the alien was informed of the charge against him and had an opportunity to respond – not mechanical adherence to regulation.

Dkt. 32 at 5-6.

Attorney General. 8 C.F.R. § 1235.4. Figueroa must make a plausible showing that "the facts presented would [have caused] the Attorney General to exercise discretion in his favor." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). A plausible showing does not require Figueroa to establish that he definitely would have received relief, but rather that there was "some evidentiary basis on which relief could have been granted." *Barajas–Alvarado*, 655 F.3d at 1089; *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012).

The Court takes a two-step approach in assessing whether a defendant has demonstrated plausibility of relief. First, the Court identifies factors relevant to the agency's exercise of discretion. *Raya-Vaca*, 771 F.3d at 1206 (citing *United States v. Rojas–Pedroza*, 716 F.3d 1253, 1263 (9th Cir.2013)). Second, the Court determines whether, considering these factors, and based on the unique circumstances of the defendant's case, it was plausible that relief would have been granted. *Id.*

The Immigration and Naturalization Services' Inspector's Field Manual provides helpful guidance into what border patrol agents consider when deciding whether to grant withdrawal of application for admission. *Barajas–Alvarado*, 655 F.3d at 1090. The Inspector's Field Manual provides for a case-by-case determination, instructing agents to "consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice." INS Inspector's Field Manual § 17.2(a) (2007), available at Westlaw FIM–INSFMAN 17.2, 2007 WL 7710869.

The Inspector's Field Manual lists six factors relevant to the question of relief: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility

against the defendant; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the grounds of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Barajas–Alvarado*, 655 F.3d at 1090-91 (citing INS Inspector's Field Manual § 17.2(a) (2001)). The Manual identifies an additional consideration, noting that withdrawal should typically not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id.* (citing the use of counterfeit documents as an example of obvious fraud).

Taking into account these considerations, Figueroa must demonstrate the plausibility of relief. The first factor weighs in favor of Figueroa: his immigration violation does not rise to the level of a serious immigration violation as his only prior entry into the United States was when he first entered the country as a child. The second factor also weighs in favor of Figueroa as he has no prior findings of inadmissibility. Third, cutting against Figueroa is his intent to violate the law, as evidenced by the fact that he entered the United States by stealth, walking through the desert. Fourth, Figueroa was not able to easily overcome his ground of inadmissibility for lack of valid documentation, as he had no petitions for status pending in 2006 and was not officially married to a United States citizen. The fifth factor weighs against Figueroa because at the time of his illegal entry, he was not elderly and does not allege that he was in poor health, therefore his age and health status did not mitigate against removal. The sixth factor of humanitarian and public interest considerations weighs in Figueroa's favor because at the time of his removal, his longtime partner and child were living in the United States.

In *Raya-Vaca*, the humanitarian and public interest concerns weighed heavily in the

defendant's favor, because his partner, their children, his parents, and much of his extended family lived in the United States, and his criminal history consisted of three misdemeanors. 771 F.3d at 1208. Similarly, in *United States v. Grande*, the factor of humanitarian and public interest considerations weighed in favor of the defendant despite his criminal history when his partner and two children lived in the United States, he had completed a high school education in the United States, and had worked full-time at the same company for over twenty years. 623 F. App'x 858, 861 (9th Cir. 2015).

Although Figueroa's family contacts in the United States are not as a substantial as those present in in *Raya-Vaca*, like the defendant in *Grande*, Figueroa had a partner and child living in the United States at the time of his removal proceedings. However, unlike the defendant in *Grande*, Figueroa did not complete high school in the United States, attending only through tenth grade, and did not present any evidence of his work history.

The Court finds it particularly significant, however, that unlike the defendants in both *Grande* and *Raya-Vaca*, Figueroa has minimal criminal history, all of which occurred when he was a minor.[2] Additionally, Figueroa has spent a significant portion of his life in the United States, having lived here since he was a young teenager. Notably, Figueroa did not engage in any fraud when entering the United States originally. Therefore, this final consideration, which would ordinarily be detrimental to withdrawal, is not present here.

Considering these factors, and the unique circumstances of Figueroa's case, the Court concludes that in 2006, Figueroa had some evidentiary basis on which relief could

---

[2] The Court does not know the disposition of any of these charges.

have been granted, and therefore had plausible grounds for relief from the removal order.

## IV. CONCLUSION

At the time of his removal proceedings in 2006, Figueroa was entitled to due process in the form of notice of the charge against him and an opportunity to respond. He did not receive this. Additionally, there is a presumption of another due process violation because there is no evidence that Figueroa signed Form I-860. Because of these violations of Figueroa's due process rights, and because Figueroa had plausible grounds for relief in the form of withdrawal of his application for admission, the Court holds that the 2006 removal order was fundamentally unfair and cannot serve as the predicate for Figueroa's conviction under 8 U.S.C. § 1326. Figueroa's motion to dismiss the indictment is granted.

## V. ORDER

The Court HEREBY ORDERS:

1. Defendant Jose Luis Figueroa-Valenzuela's Motion to Dismiss Indictment (Dkt. 15) is GRANTED.

DATED: December 10, 2019

David C. Nye
Chief U.S. District Court Judge